**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ELVAN MOORE,

      Plaintiff,

v.                                              Case No: 6:16-cv-303-Orl-28GJK

RAMON OTERO, ANTHONY EGER,
WILLIAM DUNN, and CHRISTOPHER
CLUTTER,

      Defendants.

## ORDER

    In this case, Plaintiff Elvan Moore sues four Seminole County Sheriff's deputies in their individual capacities, alleging several claims under federal and state law arising from an alleged unlawful entry into and search of Plaintiff's residence. The federal claims allege violations of Plaintiff's Fourth Amendment rights and seek relief under 42 U.S.C. § 1983.[1] Three of the four Defendants filed a motion to dismiss based, in part, on qualified immunity.[2] (Mot. Dismiss, Doc. 26). Plaintiff responded. (Doc. 27). As discussed below, the motion is due to be granted in part and denied in part.

---

[1] In his response to the motion to dismiss, Plaintiff "withdraws any § 1981 claims that were pled in the Amended [C]omplaint." (Doc. 27 at 11). Thus, Plaintiff is voluntarily dismissing these claims against all Defendants, and the motion to dismiss will be denied as moot as to the § 1981 claims.

[2] The motion was filed by Defendants Eger, Dunn, and Clutter. The motion states that Defendant Otero has not been served. Plaintiff does not respond to this assertion in his memorandum in opposition.

I.   **Background**

Plaintiff alleges that on January 26, 2012, he hosted several guests at his house, including a woman named Lauren who was romantically involved with Defendant Deputy Anthony Eger. (Am. Compl., Doc. 19, ¶¶ 13–15). Lauren remained in Plaintiff's home for approximately thirty minutes before leaving. (Id. ¶ 15). About five minutes after Lauren left, three Seminole County Sherriff's vehicles pulled into the entry of Plaintiff's residence and two more parked at opposite ends of the street. (Id. ¶ 16). Defendant Ramon Otero knocked on the front door of Plaintiff's residence. (Id. ¶ 17). After Plaintiff answered the door, Otero asked him for his identification and told him that "there was a report that a man was beating up a woman on the balcony." (Id.). Plaintiff went to retrieve his identification from the upstairs of his residence but could not find it. (Id.). When Plaintiff returned to the front door, all four Defendants—Eger, Otero, Christopher Clutter, and William Dunn—were standing at the door. (Id.). Otero then informed Plaintiff that Defendants were going to enter his residence. (Id. ¶ 18). When Plaintiff asked whether Defendants had a warrant, Plaintiff was told: "[N]o, I don't have a warrant but I am coming in anyway." (Id). Indeed, Defendants did not possess a warrant to enter Plaintiff's home. (Id. ¶ 22). Plaintiff then asked Otero whether he witnessed a crime and Otero again answered "no." (Id. ¶ 18). Plaintiff told Defendants that they were not welcome inside his residence, (Id. ¶ 19), but Defendants Eger and Otero entered and searched the residence anyway while Defendants Clutter and Dunn stood inside the front door. (Id. ¶ 20). Plaintiff alleges that Defendants "entered [Plaintiff's] home for the sole purpose of looking for [Eger's] girlfriend Lauren." (Id. ¶ 134). After realizing that Lauren was no longer in the residence, Defendants left. (Id. ¶ 21).

2

In his Amended Complaint, Plaintiff alleges five claims against each of the four individual defendants, for a total of twenty claims under state and federal law: invasion of privacy (Counts I, II, III, IV), trespass (Counts V, VI, VII, VIII), intentional infliction of emotional distress (Counts IX, X, XI, XII), violation of the Fourth Amendment under 42 U.S.C. §§ 1981, 1983, and 1988 for unlawful entry into Plaintiff's home (Counts XIII, XIV, XV, XVI), and violation of the Fourth Amendment under 42 U.S.C. §§ 1981, 1983, and 1988 for unlawful search of Plaintiff's home (Counts XVII, XVIII, XIX, XX).

II.   Standard

Generally, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). At the motion to dismiss stage, a court must construe all plausible inferences derived from the facts of the complaint in favor of the plaintiff. Whitwam v. JetCard Plus, Inc., 34 F. Supp. 3d 1257, 1259 (S.D. Fla. 2014).

III.   Analysis

A.   Qualified Immunity from § 1983 Claims

In his federal claims, Plaintiff alleges pursuant to 42 U.S.C. § 1983 that Defendants violated his Fourth Amendment rights by entering and searching his home without a warrant or other legal justification. Qualified immunity protects government officials from § 1983 suits for money damages arising from the discharge of their discretionary functions

3

as long as their conduct does not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1327 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). "This safeguard, however, does not extend to one who knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Moore v. Pederson, 806 F.3d 1036, 1042 (11th Cir. 2015) (citation and quotation omitted) (alteration in original). On a motion to dismiss, the defense of qualified immunity will only be granted "if the 'complaint fails to allege the violation of a clearly established constitutional right.'" Snider, 344 F.3d at 1327 (quoting Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001) (citation omitted)). Where successfully asserted, the defense of qualified immunity is "an immunity from suit rather than a mere defense to liability." Saucier v. Katz, 533 U.S. 194, 200–01 (2001) (emphasis and citation omitted)).

        1.    *Constitutional Violation*

The qualified immunity analysis begins with the question of "'whether plaintiff's allegations, if true, establish a constitutional violation.'" Bates v. Harvey, 518 F.3d 1233, 1242 (11th Cir. 2008) (quoting Hope, 536 U.S. at 736). The Fourth Amendment provides "'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" United States v. Timmann, 741 F.3d 1170, 1178 (11th Cir. 2013) (quoting Kyllo v. United States, 533 U.S. 27, 31 (2001)). Thus, "'searches and seizures inside a home without a warrant are presumptively unreasonable.'" Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) (quoting Groh v. Ramirez, 540 U.S. 551, 559 (2004)).

There are exceptions to the warrant requirement, however, including where exigent circumstances demonstrate a "'compelling need for official action and [there is] no time to

secure a warrant.'" United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002) (quoting Michigan v. Tyler, 436 U.S. 499, 509 (1978)). Exigent circumstances are emergency situations, including where officers must act immediately to "break[] up a violent fight, prevent[] the destruction of evidence, put[] out a fire in a burning building, attend[] to a stabbing victim, rescu[e] a kidnapped infant, or pursu[e] a fleeing suspect." Woods v. Valentino, 511 F. Supp. 2d 1263, 1276 (M.D. Fla. 2007) (citing McClish v. Nugent, 483 F.3d 1231, 1240–41 (11th Cir. 2007)). A police officer's need to protect or preserve life is considered "[t]he most urgent emergency situation excusing police compliance with the warrant requirement." Holloway, 290 F.3d at 1335 (citation omitted).

"In validating a warrantless search based on the existence of an emergency, as with any other situation falling within the exigent circumstances exception, the Government must demonstrate both exigency and probable cause." Id. at 1337. "[I]n an emergency, the probable cause element may be satisfied where officers reasonably believe a person is in danger." Id. at 1338. Therefore, for a warrantless search to be valid under these circumstances there must be (1) an objectively reasonable belief that a person was in danger and (2) an immediate need to act. Timmann, 741 F.3d at 1179 n.4. The subjective motivation of the officers is irrelevant. Brigham City, Utah, 547 U.S. at 404.

The Court cannot conclude at this stage of the case that there were exigent circumstances excusing Defendants' warrantless entry into and search of Plaintiff's home. The Amended Complaint does not allege that Defendants actually received a report of a man beating up a woman on the balcony—a fact that forms the basis of Defendants' instant argument. Rather, the Amended Complaint alleges that Otero *told* Plaintiff that such a report existed, which is materially different from alleging that a report actually existed.

Applying the 12(b)(6) standard, there is an inference that if Defendants "entered [Plaintiff's] home *for the sole purpose* of looking for [Eger's] girlfriend Lauren," (id. ¶ 134 (emphasis added)), the report as articulated by Otero did not exist.³ Put another way, if the report of a man beating up a woman actually existed, Defendants would not have entered the premises "*for the sole purpose*" of looking for Lauren—they would have been looking for an ongoing physical altercation or an injured person in need of medical assistance. Defendants' alleged conduct further supports the inference that there was no report: when Defendants arrived at Plaintiff's residence, they allegedly did not act as if there was an ongoing emergency; rather, they asked Plaintiff for his identification and patiently waited at the door for his return. Absent allegations establishing an exception to the warrant requirement, the Amended Complaint plausibly pleads a Fourth Amendment violation.⁴

---

³ The moving Defendants are correct that the subjective intent of the police officers does not matter because "the tests for analyzing probable cause and exigent circumstances are objective." United States v. Franklin, 694 F.3d 1, 9 (11th Cir. 2012). At this stage, however, the subjective intent of the officers as stated in the Amended Complaint must be accepted as true and I must also construe all reasonable inferences in favor of the plaintiff. Thus, I must infer that, if Defendants' sole purpose in entering and searching Plaintiff's home was to search for Lauren, then Defendant Otero's statement that there was a report of a fight must be either inaccurate or false.

⁴ Even assuming that a report existed, the facts alleged in the Amended Complaint still fall short of exigent circumstances. The cases that find exigent circumstances as a result of a 911 call all have in common an "urgent, ongoing emergency, in which officers have received emergency reports of an ongoing disturbance, *arrived to find a chaotic scene, and observed violent behavior, or at least evidence of violent behavior.*" Timmann, 741 F.3d at 1179 (emphasis added); see Brigham City, Utah, 547 U.S. at 403 (finding exigent circumstances where officers responded to a noise complaint and then, through a screen door and window, saw a fight break out inside the house); Holloway, 290 F.3d at 1334 (finding exigent circumstances where officers responded to multiple reports of gunshots and arguing at a house and upon arrival found a husband and wife on the porch of their mobile home, a shotgun shell lying on a picnic table, three shotgun shells lying in the grass, and a shotgun with the safety disengaged lying against the side of the home).

Here, the Amended Complaint alleges no facts indicating that after Defendants arrived at Plaintiff's residence—or after they waited for Plaintiff to retrieve his identification—they observed any violent behavior or at least any evidence of violent

6

2.   *Clearly Established Law*

The second inquiry under the qualified immunity analysis is whether the constitutional right at issue was clearly established at the time it was violated. A constitutional right is clearly established where its contours are so unambiguous that every objectively reasonable official would understand that his conduct, in the context and circumstances of the case, plainly violates the right. Snider, 344 F.3d at 1328. Here, the moving Defendants' arguments relating to clearly established law rely on the premise that there existed a report of a fight on a balcony. The moving Defendants do not argue that it was not clearly established that they could not—in the absence of exigent circumstances—conduct a warrantless search of a home. Whether exigent circumstances existed is a factual issue that cannot be resolved at this stage of the case, and the motion to dismiss Counts XIII through XX on the grounds of qualified immunity must be denied.

B.   **State Claims for Trespass and Invasion of Privacy**

The moving Defendants' sole argument for dismissal of Plaintiff's claims for trespass and invasion of privacy relies on the existence of exigent circumstances. As discussed above, the facts as stated in the Amended Complaint do not establish exigent circumstances; therefore, the motion to dismiss is due to be denied as to the trespass and invasion of privacy claims.

C.   **State Claims for Intentional Infliction of Emotional Distress**

The moving Defendants argue that Plaintiff fails to sufficiently plead a claim of intentional infliction of emotional distress. To survive a motion to dismiss on a claim of

---

behavior. Moreover, there are no facts alleged in the Amended Complaint that the timing of the report was close to Defendants' arrival or that the reported fight was so severe as to allow officers to reasonably draw the inference that there was a victim inside the home in need of immediate protection or medical treatment.

intentional infliction of emotional distress, a plaintiff must plead facts that, accepted as true, would establish that "(1) the defendants' conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Pederson, 806 F.3d at 1053 (citation omitted). With regard to the second prong, "Florida courts have found '[l]iability . . . only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 279 (Fla. 1985) (citation omitted)).

The facts alleged in the Amended Complaint do not sufficiently allege the second prong of a claim of intentional infliction of emotional distress. While an unlawful search may invade Plaintiff's privacy, it was not sufficiently extreme and outrageous to "go beyond all possible bounds of decency" absent some other grievous conduct on the part of the Defendants. See Frias v. Demings, 823 F. Supp. 2d 1279, 1289 (11th Cir. 2011) (finding no outrageous conduct where a police officer entered plaintiff's home without exigent circumstances or probable cause and arrested the plaintiff, who was wearing only a towel). Therefore, Plaintiff's claims for intentional infliction of emotional distress alleged in Counts X, XI, and XII are due to be dismissed.

D. **Immunity Under § 768.28(9)(a), Florida Statutes**

With regard to Plaintiff's state law claims, the moving Defendants argue that they are immune under section 768.28(9)(a), which precludes individual liability of municipal officers absent a showing of "bad faith," "malicious purpose," or conduct "exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). At this

stage of the proceeding, the question for the court is whether the Amended Complaint contains sufficient allegations to "'conclude that the [officer's] conduct was willful and wanton, or would otherwise fall within the exceptions to the statute.'" Claridy v. Golub, 632 F. App'x 565, 571 (11th Cir. 2015) (quoting Furtado v. Yun Chung Law, 51 So.3d 1269, 1277 (Fla. 4th DCA 2011)).

The moving Defendants' only argument for immunity under § 768.28(9)(a) relies on the existence of a report of a man beating up a woman on Plaintiff's balcony. Because there is a factual question as to whether such a report existed, this argument fails.

### IV. Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion to Dismiss (Doc. 26) filed by Defendants Eger, Dunn, and Clutter is **GRANTED in part, DENIED in part, and deemed moot in part**. The motion is **granted** to the extent it seeks to dismiss Plaintiff's claims of intentional infliction of emotional distress against Defendants Eger, Dunn, and Clutter in Counts X, XI, XII. In light of Plaintiff's "withdrawal" of his § 1981 claims, which the court construes as voluntary dismissal of those claims, the motion is **deemed moot** with regard to Plaintiff's § 1981 claims. The motion is otherwise **denied**.

2. Plaintiff's claims of intentional infliction of emotional distress in Counts X, XI, XII are **DISMISSED**.

3. As stated in Plaintiff's response, (Doc. 17 at 11), Plaintiff has voluntarily dismissed Counts XIII through XX to the extent thy are based on 42 U.S.C. § 1981. Those counts remain pending insofar as they are brought pursuant to 42 U.S.C. § 1983.

4. Defendants Eger, Dunn, and Clutter shall file an Answer **on or before Friday, September 2, 2016**.

5. **On or before Friday, September 2, 2016**, Plaintiff shall, pursuant to Federal Rule of Civil Procedure 4(m), show cause as to why the claims against Defendant Otero should not be dismissed.

**DONE** and **ORDERED** in Orlando, Florida, on August 12th, 2016.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties